1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8         FOR THE EASTERN DISTRICT OF CALIFORNIA

9    MARIO CANODY,

10          Petitioner,                     No. CIV S-03-2296 GEB JFM P

11        vs.

12   DIRECTOR, CALIFORNIA
     DEPARTMENT OF CORRECTIONS,
13

14          Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction of

18   robbery with the use of a weapon.  He raises seven claims that his constitutional rights were

19   violated.  Petitioner alleges he was deprived of his right to a speedy trial and to a pretrial lineup;

20   he received ineffective assistance of trial counsel; the prosecutor committed misconduct, and

21   there was insufficient evidence to support the weapons enhancement.  Finally, petitioner

22   contends the trial court abused its discretion by enhancing his conviction with a prior conviction

23   that was unconstitutional and by allowing the prosecution to impeach petitioner with seven prior

24   felony convictions.  After a careful review of the entire record in this action, including the lodged

25   records of the state court, this court has determined that the petition for habeas corpus should be

26   denied.

FACTUAL BACKGROUND[1]

On September 3, 1998, Terry O. was walking to a light rail station in downtown Sacramento to catch the 4:36 a.m. light rail train to take her to work.  As she approached the station she saw [petitioner], a shirtless Black man with dreadlocks, sitting on a planter box.  No one else was in the area.

After passing [petitioner], Ms. O. glanced back in his direction and discovered he was upon her.  [Petitioner] grabbed her and placed one hand over her nose and mouth and the other hand around her chest.  As she struggled and tried to pull his hand away from her face, [petitioner] held a cold metal object against her neck, threatened to hurt her if she screamed, and forced her to give him her backpack.

The victim got onto the train and watched as [petitioner] went through her backpack.  She provided the train operator with [petitioner's] description, which was radioed to other light rail trains and the Sacramento Police Department.

At 4:45 a.m., Michael Hill was driving a train headed in the same direction as the one the victim had boarded and heard the description.  About four minutes later Hill saw [petitioner] two stations past the station at which the incident had occurred.  [Petitioner] was donning a shirt, had a bicycle and got on the last car of Hill's train.  Hill called in this information and continued to watch [petitioner] to see if he got off the train.   He did not.

About 15 minutes later, a police officer met Hill's train at the 65th Street station and boarded the last car, which was occupied only by [petitioner] and a woman.  [Petitioner] was patted down for weapons but none were found.  [Petitioner], his bicycle and a backpack in his possession were removed from the train.  On the floor near where [petitioner] had been seated was a plastic wallet that contained bus passes.  The officer also found crumpled food stamps and two Water World passes on the floor.

While [petitioner] was standing beside a patrol car, an RT supervisor drove up with the victim.  Before the police officer could admonish the victim regarding curbside identifications, she blurted out, "That's him."  The victim identified the items found on the floor of the train as hers, as well as the variety of items taken from [petitioner's] backpack, which included a pair of sunglasses in a case, cough drops, food stamps, a bus schedule, a bottle of Motrin, a watch, a key chain in the form of a miniature

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Canody, No. C033180, (July 25, 2002), a copy of which is attached as an exhibit to the petition, filed November 4, 2003.

electronic game and starburst candies.  The police also found a metal fork in [petitioner's] backpack.

The victim identified [petitioner] as her assailant on two additional occasions prior to trial and again at trial.  On each of these occasions [petitioner] was the only Black man present with dreadlocks.  Hill, who had only glanced at [petitioner] when he got on the light rail train, could not identify [petitioner] at trial.

[Petitioner] testified that he worked at a furniture store as a wood operator starting at 6:00 a.m. and sometimes rode the light rail part of the way and his bicycle the rest of the way.  When he left the house the morning the victim was attacked, he had on two shirts and his hair was in a bandanna, as it was at the time of his arrest.  [Petitioner] found many of the items identified by the victim as hers on the floor and put some of them in his backpack.  Other items he simply left.  Some of the items identified by the victim as hers were [petitioner's].  [Petitioner] routinely carried the fork to work to eat lunch.

(People v. Canody, slip op. at 2-4.)

## ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

3

1    Under the "unreasonable application" clause of section 2254(d)(1), a federal

2  habeas court may grant the writ if the state court identifies the correct governing legal principle

3  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4  prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5  simply because that court concludes in its independent judgment that the relevant state-court

6  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7  application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63,

8  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

9  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

10    The court looks to the last reasoned state court decision as the basis for the state

11  court judgment.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).

12  II. <u>Petitioner's Claims</u>

13    A. <u>Claim One</u>

14    Petitioner's first claim is that he was deprived of his right to a speedy trial.

15    The last reasoned rejection of this claim is the decision of the California Court of

16  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court rejected this

17  claim as follows:

18    Pursuant to section 1382, a felony case must be dismissed if the
   defendant is not brought to trial within 60 days of arraignment
19    unless good cause for the delay is shown or the defendant consents
   to a date beyond the 60 days.  In the latter case, he must be brought
20    to trial on the agreed date or within 10 days thereafter.[2]

21

22    [2]  At the time of [petitioner's] trial, section 1382 provided, in pertinent part:  "(a) The
   court, unless good cause to the contrary is shown, shall order the action to be dismissed in the
23  following cases: [¶] . . . [¶]  (2) in a felony case, when a defendant is not brought to trial within
   60 days of the defendant's arraignment. . . .  However, an action shall not be dismissed under this
24  paragraph if either of the following circumstances exist:  [¶] . . . [¶]  (B) The defendant requests
   or consents to the setting of a trial date beyond the 60-day period.  Whenever a case is set for trial
25  beyond the 60-day period by request or consent, expressed or implied, of the defendant without a
   general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days
26  thereafter."  (Stats. 1998, ch. 931, § 405.5.)

4

"A continuance granted at the request of counsel normally constitutes such good cause [citation], at least in the absence of evidence showing incompetency of counsel [citation] or circumstances where counsel's request for a continuance is prompted only by the need to service other clients and the defendant himself objects to the delay.  [Citation.]  Moreover, a defendant's failure to timely object to the delay and thereafter move for dismissal of the charges is normally deemed a waiver of his right to a speedy trial.  [Citation.]"[3]

A chronic lack of courtrooms will not constitute good cause for delaying the defendant's trial.[4]

On each of the following dates, [petitioner] was present in court either with appointed or stand-in counsel.  On December 11, 1998, [petitioner] was arraigned on the information and trial was set for February 4, 1999, five days short of the 60th day beyond the date of arraignment.  On February 4, [petitioner's] counsel requested that the matter be continued to February 11 because he was engaged in trials.  On February 11, stand-in counsel for [petitioner] requested the case be continued to February 17 because regular counsel was still in trial.  On February 17, without objection from either [petitioner] or his counsel, the court continued the matter to February 18 due to the lack of an available courtroom.  On February 18, the court continued the matter to February 24 for the same reason; however, at this point, [petitioner's] counsel refused to waive time.

On February 24, at [petitioner's] request, his counsel moved for dismissal based on a purported violation of his right to a speedy trial under section 1382.  Counsel argued that February 24 [was] more than 60 days from the December 11 arraignment date, and that counsel was not aware of any time waivers given by [petitioner] or other counsel who had "stood in" for him at other appearances.  The court denied the motion and trial commenced that day.

[Petitioner] argues that neither his counsel's involvement in another trial nor the unavailability of courtrooms constitutes good cause for the continuances.  While this is true in some instances, it is not so in these circumstances.

[Petitioner's] complaint that his appointed counsel's involvement in another trial does not constitute good cause to continue his trial beyond the statutory limit is resolved by *Johnson*, wherein the court stated:  "[W]hen the public defender, burdened by the

---

[3]   *People v. Wright* (1990) 52 Cal.3d 367, 389.

[4]   *People v. Johnson* (1980) 26 Cal.3d 557, 570-571 (*Johnson*).

conflicting rights of clients entitled to a speedy trial, seeks to waive one client's right, that conduct cannot be justified on the basis of counsel's right to control judicial proceedings.  The public defender's decision under these circumstances is not a matter of defense strategy at all; it is an attempt to resolve a conflict of interest by preferring one client over another.  As a matter of principle, such a decision requires the approval of the disfavored client.  [Citation.]  We conclude that the consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client. . . ."[5]  In a footnote to this holding, the *Johnson* court noted that the accused's failure "to make timely objection to a postponement constitutes implied consent to the postponement."[6]

Relying on *People v. Noriega, Gomez v. Municipal Court, and Beasley v. Municipal Court*,[7] [petitioner] claims his consent cannot be implied because the trial court failed "to make the necessary inquiries to guarantee [his] statutory speedy trial rights."  These cases are of no support to [petitioner] because the defendants therein either objected to the continuance[8] or the continuance was occasioned by an invalid order of the court.[9]

[Petitioner] also complains that continuing the case on February 18 to February 24 due to the lack of an available courtroom does not constitute good cause to continue his case.  He is incorrect.  [Petitioner's] first objection to continuing his case was made on February 18.  Consequently, pursuant to section 1382, the court had 10 days from February 18 within which to bring [petitioner] to trial, and it did so with time to spare.

(People v. Canody, slip op. at 5-9.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

shall enjoy the right to a speedy and public trial . . ."  U.S. Const., Amend. VI.  The court looks at

---

[5] *Johnson, supra,* 26 Cal.3d at pages 566-567.

[6] *Johnson, supra,* 26 Cal.3d at page 567, footnote 7.

[7] *People v. Noriega* (1997) 59 Cal.App.4th 311 (*Noriega*); *Gomez v. Municipal Court* (1985) 169 Cal.App.3d 425 (*Gomez*); *Beasley v. Municipal Court* (1973) 32 Cal.App.3d 1020 (*Beasley*).

[8] *Noriega, supra,* 59 Cal.App.4th at page 320, footnote 4; *Gomez, supra,* 169 Cal.App.3d at page 427.

[9] *Beasley, supra,* at pages 1025-1026.

1  four factors in assessing a Sixth Amendment speedy trial claim: the length of the delay, reason

2  for the delay, the accused's assertion of his right to a speedy trial, and the prejudice to him caused

3  by the delay.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  The first factor, length of delay, "is to

4  some extent a triggering mechanism.  Until there is some delay which is presumptively

5  prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Ibid.

6         Here, petitioner was arraigned on December 11, 1998 (CT 26) and trial was set for

7  February 4, 1999, five days short of the 60 day speedy trial period.  (CT 52-53.)  As noted above,

8  trial was continued twice based on defense counsel's unavailability and twice based on the

9  unavailability of a courtroom.  (Petition at 7-8.)  Defense counsel objected to the last

10  continuance, on February 18, refusing to waive time, and trial was continued to February 24,

11  1999.  (CT 4.)  Jury selection commenced on February 24, 1999.  (RT 18.)

12         Petitioner's trial commenced 73 days after his arraignment.  Petitioner claims only

13  that a delay of more than sixty days is presumptively prejudicial.  This contention is without

14  merit, and petitioner has made no other showing that he was prejudiced by the delay in the start

15  of his trial.[10]  Petitioner's first claim for relief is without merit.

16      B.  Claim Two

17         Petitioner alleges he was denied his right to a pre-preliminary hearing lineup.

18  Petitioner contends that "the state, through the police, elected to conduct a curbstone showup to

19  obtain an identification."  (Petition at 14.)  Petitioner contends that this "showup" was unduly

20  suggestive and increased the risk that he was misidentified as the perpetrator.  Respondent

21  contends that petitioner has not demonstrated, by citation to United States Supreme Court

22  authority, that petitioner has a constitutional or statutory right to such a lineup.

23  /////

24

---

25     [10]  Indeed, the record reflects that part of the delay was caused by defense counsel's

26  unavailability and, once defense counsel objected to the delay, trial started within the ten day
period provided by Cal. Penal Code § 1382.

In state court, prior to the preliminary hearing, petitioner filed a motion requesting a lineup, claiming there was a reasonable likelihood he had been misidentified as the culprit. (CT 16.)  Petitioner contended the alleged eyewitness did not have sufficient opportunity to observe the suspect and was subject to "pressures at the time of the incident which would color his or her ability to identify a suspect" and depended on "cross-racial identification by a single eyewitness." (CT 18-19.)  The trial court denied the motion.  (CT 3.)

The California Court of Appeals found that

> under the uncontested facts, the victim had the opportunity to view her assailant when she first passed him, again when he attacked her, and again when he went through her backpack.  She described her assailant as an adult Black male, who was shirtless and had long dreadlocks.  A light rail train conductor notified the police that a person matching that  description had boarded his train at 16th Street.  This person, who was [petitioner], was taken into custody at the 65th Street station where the victim again identified him as well as some of her property that was found in [his] possession.

(People v. Canody, slip op. at 12.)  On appeal, petitioner contested these facts, for the first time, arguing that the victim's initial description omitted any description of race or facial characteristics, and misled the court by suggesting petitioner was found "with the victim's backpack."[11]  (Id. at 13.)  The Court of Appeals found that the trial court could reasonably infer that the victim would not have identified someone who was not Black because she had seen him at least three times prior to the showup and emphasized that "some of the victim's recently stolen property was found in [petitioner's] backpack."  (Id.)  The Court of Appeals held that

> given the victim's several opportunities to view [petitioner], coupled with his possession of her property, the court could rationally infer there was no reasonable likelihood of misidentification.  Consequently, [petitioner] has failed to demonstrate any abuse of discretion by the court in denying the motion.

(Id. at 14.)

---

[11]  The actual statement was:  "In addition, the [petitioner] was seen with a backpack and was found with some of the victim's property on his person."  (Id. at 13.)

The Due Process Clause of the United States Constitution prohibits the use of identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 326 (1987).  Each case "must be considered on its own facts." Simmons v. United States, 390 U.S. 377, 384 (1968). See also Neil v. Biggers, 409 U.S. 188, 198 (1972); United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984) (articulating a two-step in determining the constitutionality of pretrial identification procedures:  first, whether the procedures used were impermissibly suggestive and, if so, whether the identification was nonetheless reliable).  Whether due process has been violated depends on "the totality of the circumstances" surrounding the confrontation." Simmons, 390 U.S. at 383; Stovall, 388 U.S. at 302.

"When analyzing lineup claims, a reviewing court must determine if the procedures in question were 'unnecessarily suggestive.'" Van Tran, 212 F.3d at 1156 (quoting Biggers, 409 U.S. at 198).  Even if the procedures are suggestive, the resulting evidence is only to be excluded if it is not reliable. Biggers, 409 U.S. at 199-200; Van Tran, 212 F.3d at 1156 ; United States v. Duran-Orozco, 192 F.3d 1277, 1282 (9th Cir. 1999).  If the flaws in the pretrial identification procedures are not so suggestive as to violate due process, "the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." Foster v. California, 394 U.S. 440, 443 n.2 (1969). See also Manson v. Brathwaite 432 U.S. 98, 116 (1977) ("[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature").  On the other hand, if an out-of-court identification is inadmissible due to unconstitutionality, an in-court identification is also inadmissible unless the government establishes that it is reliable by introducing "clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." United States v. Wade, 388 U.S. 218, 240 (1967). See also United States v. Hamilton, 469 F.2d

880, 883 (9th Cir. 1972) (in-court identification admissible, notwithstanding inherent

suggestiveness, where it was obviously reliable).  Factors indicating the reliability of an

identification include:  (1) the opportunity to view the criminal at the time of the crime; (2) the

witness's degree of attention (including any police training); (3) the accuracy of the prior

description; (4) the witness's level of certainty at the confrontation; and (5) the length of time

between the crime and the identification.  Manson, 432 U.S. at 114 (citing Biggers, 409 U.S. at

199-200)).  The "central question" is "whether under the 'totality of the circumstances' the

identification is reliable even though the confrontation procedure was suggestive." Biggers, 409

U.S. at 199.  In some cases, however, "the procedures leading to an eyewitness identification

may be so defective as to make the identification constitutionally inadmissible as a matter of

law." Foster, 394 U.S. at 443 n.2.[12]

Here, the curbside showup was suggestive in the sense there was only one black

man with dreadlocks present when the victim drove up with the RT supervisor.  However, the

totality of the circumstances here demonstrate that the identification was not unreliable.  The

victim saw the perpetrator in passing before the crime and again during the robbery.  But once

the victim got on the train after the robbery, she was able to view the perpetrator going through

her backpack.  The victim then accompanied an RT supervisor to the scene where petitioner had

been apprehended and was standing next to the patrol car.  The victim immediately blurted out

"that's him" when she saw the petitioner.  This identification occurred less than one hour after

the robbery, within about "45 minutes."  (RT 56; 68.)  The victim again identified petitioner as

---

[12]  In Foster, pretrial identification procedures were found to be unduly suggestive and,
therefore, violative of due process where: (1) the witness failed to identify defendant the first
time he confronted him, despite a suggestive lineup where the other two persons in the lineup
were substantially shorter than defendant and defendant was wearing a leather jacket similar to
that worn by the bank robber; (2) police then arranged a one-on-one show up, at which the
witness could make only a tentative identification; and (3) the police conducted another lineup at
which petitioner was the only person in the second lineup who had also been in the first lineup
and where the witness, finally, "was able to muster a definite identification."  The Supreme Court
stated that "the pretrial confrontations clearly were so arranged as to make the resulting
identifications virtually inevitable."  394 U.S. at 443.

1  the perpetrator at the preliminary hearing on December 8, 1998.  (RT 55.)  The victim identified

2  petitioner as the perpetrator at trial, on February 25, 1999.  (RT 33.)

3  The victim's identification of petitioner at the confrontation was certain and

4  immediate.  Her identification of petitioner at trial was unwavering.  Only a brief period of time

5  elapsed between the robbery and the confrontation.  Moreover, some of the victim's personal

6  belongings were found in petitioner's possession.  Thus, the totality of the circumstances here

7  demonstrate the reliability of the identification.  This claim must also be denied.

8  C.  Claim Three

9  Petitioner claims that he was denied effective assistance of counsel by defense

10  counsel's failure to effectively litigate the motion to dismiss for violation of petitioner's right to a

11  speedy trial and failure to seek pretrial appellate review of the denial of that motion, as well as

12  failure to effectively litigate the motion for pretrial lineup and failure to seek pretrial appellate

13  review of the denial of that motion.

14  The California Court of Appeal rejected petitioner's arguments that he received

15  ineffective assistance of counsel.

16  In order to establish ineffective assistance of counsel, the
   [petitioner] must demonstrate, inter alia, that there was no
17  reasonable justification for counsel's acting or failing to act in the
   challenged manner.[13]  A reasonable justification is that [petitioner]
18  informed counsel that he was willing to waive his speedy trial right
   in order to assure going to trial with present counsel.  Such a
19  reason would eliminate any purported conflict of interest by
   counsel's being engaged in another trial; it would explain why
20  counsel did not pursue the denial of the motion by seeking an
   extraordinary writ; and it would explain why, if it be the case,
21  counsel did not pursue the motion brought at [petitioner's]
   personal request with the vigor appellate counsel believes trial
22  counsel should have employed.
   (People v. Canody, slip op. At 9.)

23  The United States Supreme Court set forth the test for demonstrating ineffective

24

25  _____

26  [13]  People v. Wilson (1992) 3 Cal.4th 926, 936; People v. Fosselman (1983) 33 Cal.3d
   572, 581.

assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>Id.</u> at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. <u>Id.</u>  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 689).

Second, a petitioner must affirmatively prove prejudice.  <u>Id.</u> at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391-92 (2000); <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).

Here, petitioner cannot demonstrate prejudice.  The state appeals court rejected petitioner's argument that he was entitled to a pretrial lineup finding there was no reasonable likelihood of misidentification.  (<u>People v. Canody</u>, slip op. At 14.)  The state appeals court also rejected petitioner's argument that his right to a speedy trial was violated.  In light of these rulings, petitioner cannot show that had his defense counsel sought pretrial appellate review such review would have been granted.  Moreover, because the victim identified petitioner as the perpetrator and the victim's belongings were found on petitioner's person less than an hour after the robbery, petitioner cannot demonstrate that but for more effectively lawyering on defense counsel's part that the outcome of the trial would have been different.  Petitioner's claim of ineffective assistance of counsel should also be denied.

/////

/////

D.  Claim Four

Petitioner contends the prosecutor committed misconduct by remarking during trial "once a thief."

The state court rejected this claim as follows:

We conclude that, even if the prosecutor committed misconduct, the issue was waived, and in any event, the error was harmless.

When [petitioner] testified, he admitted taking some of the property he claimed he found on the bus although it did not belong to him and he admitted three prior theft-related convictions and two prior "other felony offenses."  On cross-examination, the prosecutor elicited the two additional theft-related convictions. The prosecutor also sought to have [petitioner] admit to being a thief because of the items he admitted having taken on the bus, causing [petitioner's] counsel to object and state, "A thief can reform."  Shortly thereafter, the prosecutor again requested [petitioner] to admit he was a thief, and the following exchange occurred:

"[Defense Counsel]:  I suppose I should interpose the same objection I did last time.  That question is vague as to point of time.  [¶] THE COURT:  I take it you're referring to today or now? [¶]  [Defense Counsel]:  I take it that way too, your Honor, but I'm not sure that anyone would have to[,] given the question itself.  [¶] [Prosecutor]:  Well, once a thief – [¶] Mr. Canody, on September 3rd, 1998[,] you were a thief, correct?  [¶]  [Petitioner]:  No."

We agree with [petitioner] that this was an improper use of [petitioner's] prior incidents of thievery.  Evidence Code section 1101, subdivision (a) provides in pertinent part:  "[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  The clear implication of the prosecutor's comments was that, because [petitioner] had been a thief on prior occasions, he also was a thief on this occasion.  Such use violated Evidence Code section 1101, subdivision (a).

Assuming the prosecutor's comments rose to the level of misconduct, the issue is waived.  "'As a general rule a [petitioner] may not complain on appeal of prosecutorial misconduct unless in a timely fashion–and on the same ground–the [petitioner] made an assignment of misconduct and requested that the jury be

13

1    admonished to disregard the impropriety.'"[14]  Here, [petitioner]
2    neither objected nor requested an appropriate admonition.  Given
     the ease with which the error could have been corrected had it been
3    brought in a timely manner to the court's attention, the issue is
     waived.  Moreover, the error was harmless given that the case
4    against [petitioner] was overwhelming.

5    (People v. Canody, slip op. at 16-18.)

6          The Ninth Circuit has recognized and applied California's contemporaneous

7    objection rule, under which a defendant must make an objection at trial in order to preserve a

8    claim on appeal, as grounds for denying a federal habeas claim under the doctrine of procedural

9    default where, as here, there was a complete failure to object at trial.  See Vansickel v. White,

10   166 F.3d 953, 957-58 (9th Cir.1999).  Because petitioner made no objection to the prosecutor's

11   statement at trial, as is required under California's contemporaneous objection rule, this claim is

12   procedurally defaulted.  See id.  Although a petitioner may avoid procedural default by showing

13   the requisite "cause and prejudice," see id., petitioner here has made no such showing, or even an

14   effort to do so.

15         However, even assuming petitioner had objected at trial, petitioner has not

16   demonstrated actual prejudice by the prosecutor's statement concerning character evidence.

17   Success on a claim of prosecutorial misconduct requires a showing that the conduct so infected

18   the trial with unfairness as to make the resulting conviction a denial of due process.  Greer v.

19   Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to determine "whether,

20   considered in the context of the entire trial, that conduct appears likely to have affected the jury's

21   discharge of its duty to judge the evidence fairly."  United States v. Simtob, 901 F.2d 799, 806

22   (9th Cir. 1990).  Generally, if an error of constitutional magnitude is determined, a harmless error

23   analysis ensues.  Error is considered harmless if the court, after reviewing the entire trial record,

24   decides that the alleged error did not have a "substantial and injurious effect or influence in

25   _____

26        [14]  *People v. Hill* (1998) 17 Cal.4th 800, 820 quoting *People v. Berryman* (1993) 6
     Cal.4th 1048, 1072.

determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993). Error is deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's substantial rights." <u>Kotteakos v. United States</u>, 328 U.S. 750, 760-761 (1946). Under this standard, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice." <u>See</u> <u>Brecht</u>, 507 U.S. at 637.

The prosecutor's statement, although improper, did not rise to the level of actual prejudice in light of the evidence presented against petitioner. The state court of appeals' rejection of petitioner's claim of prosecutorial misconduct was neither contrary to, nor an unreasonable application of, the foregoing principles. Petitioner's fourth claim for relief should be denied.

E. Claim Five

Petitioner also claims there was insufficient evidence to support the weapons enhancement.[15]

The California Court of Appeals rejected this claim as follows:

The court instructed the jury that it was alleged that during the commission of the robbery the [petitioner] "personally used a deadly and dangerous weapon, to wit, a metal fork" within the meaning of section 12022, subdivision (b). The jury found the allegation true. [Petitioner] contends the evidence is insufficient to support this finding because the victim could not identify the weapon used against her. We are not persuaded.

When a defendant challenges the sufficiency of the evidence to support a weapon enhancement, "[t]he question [on appeal] is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the underlying enhancement beyond a reasonable doubt."[16]

---

[15]   It is unclear whether petitioner intended to include this claim in his federal petition. This claim was not included in the grounds section of the petition (Petition at 4-5) and no argument was included concerning this claim. However, this claim was included on one document entitled "Issues Presented," and appended to the Petition.

[16]   *People v. Alvarez* (1996) 14 Cal.4th 155, 225.

> The victim testified that [petitioner] grabbed her from behind, placed his hand over her "face and [] nose," put a metallic thing" against her neck, and threatened to hurt her if she screamed.  When [petitioner] was taken into custody approximately one-half hour later, he was found to have a metal fork in his possession.  Notwithstanding that the victim was unable to specify that the object placed against her neck was a fork, given the temporal proximity between the robbery and [petitioner's] capture, coupled with his possession of a fork, an object that met the victim's description, along with his threat to hurt her when he placed it against her throat, a trier of fact could rationally conclude that the weapon used was the fork.

(People v. Canody, slip op. at 18-19.)

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16.  The prosecution "need not affirmatively 'rule out every hypothesis except that of guilt'; and . . . a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326)).

1   After reviewing the entire record, this court finds that the state court's conclusion

2   that there was sufficient evidence to establish petitioner's guilt beyond a reasonable doubt is not

3   an unreasonable application of the federal due process standards set forth above.

4   F.  Claim Six

5   Petitioner contends the five year Penal Code section 667(a) prior felony

6   conviction enhancement based on the May 1981 guilty plea must be vacated because the plea

7   record establishes he did not expressly waive his privilege against self-incrimination.[17]

8   The California Court of Appeals rejected this claim.  (People v. Canody, slip op.

9   at 19-23.)

10   The Supreme Court has held that relief is generally unavailable to a state prisoner

11   through a petition for a writ of habeas corpus when prisoner challenges a current sentence on the

12   ground it was enhanced based on an allegedly unconstitutional prior conviction for which the

13   petitioner is no longer in custody.  Lackawanna County District Attorney v. Coss, 532 U.S. 394

14   (2001).  The only exception to the rule barring challenges to prior convictions used to enhance

15   current sentences is that a petitioner may challenge a prior conviction on the ground that there

16   was a failure to appoint counsel in that case in violation of the Sixth Amendment.  Id., 532 U.S.

17   at 404.  Petitioner makes no such claim here.

18   To the extent petitioner claims that this prior conviction cannot be used as a strike

19   for purposes of California's three strikes law or a prior serious felony enhancement, such a claim

20   does not implicate a constitutional right and, as such, is not cognizable in this federal habeas

21   corpus proceeding.  See Miller v. Vasquez,  868 F.2d 1116, 1119 (9th Cir. 1989) (federal habeas

22   relief is not available for alleged errors in the application or interpretation of state sentencing

23   laws).

24   Thus, this claim should also be denied.

25   _____

26   [17]  This claim was also omitted from the grounds portion of the federal petition and
petitioner included no argument concerning this claim.

17

G.  Claim Seven[18]

Finally, petitioner claims the trial court abused its discretion by allowing the prosecution to impeach petitioner with five "theft-related" prior convictions and two "unnamed" felony convictions.[19]

The California Court of Appeals rejected this claim as follows:

Prior to trial, the prosecutor filed a motion seeking a ruling permitting impeachment of [petitioner] with his seven prior convictions–five for robbery and two for possession of a weapon by an inmate.  The court initially ruled all the priors were admissible but could be referred to only as "felony crimes involving moral turpitude."  The court then acquiesced in [petitioner's] request to have the robberies referred to as theft-related felonies and the weapon possession charges as "felony convictions."  [Petitioner] testified and the convictions were used to impeach his testimony.

[Petitioner] complains that the court abused its discretion by permitting use of all seven convictions to impeach him because it cast him in the light of a career criminal, thereby increasing the probability that the jury would misuse the prior convictions as improper character or propensity evidence.  Again, we disagree.

"[S]ubject to the trial court's discretion under [Evidence Code] section 352[,] [article I, section 28(f) of the California Constitution] authorizes the use of any felony conviction which necessarily involves moral turpitude . . . [for impeachment purposes]."  Discretion is abused only where the court exceeds the bounds of reason under all of the circumstances being considered.  There is no specific limitation to the number of priors admissible for impeachment.

Robbery and statutes prohibiting possession of specified weapons are offenses involving moral turpitude.  The convictions occurred from 1979 to 1989, and since [petitioner] was not paroled until 1997, they are not too remote.  While the robbery offenses were identical to the offense charged, this is simply one factor in determining their admissibility and their prejudicial effect in this respect was adequately offset when the court, at [petitioner's]

---

[18]  This claim was similarly omitted from the grounds portion of the federal petition; however, petitioner did include argument concerning this claim.  (Petition at 24-34.)

[19]  The trial court sanitized petitioner's prior robbery convictions to "theft-related" convictions and sanitized his two additional felonies sustained while incarcerated to "unnamed" felonies so the jury would not learn of his prior incarceration.  (Petition at 24.)

request, permitted them to be referred to only as theft-related offenses. Additionally, [petitioner] never claimed that fear of impeachment by the priors might preclude him from testifying, and he did testify. Moreover, in finding the priors admissible, the court knew it would instruct the jury, as it did, that consideration of the priors was limited to the issue of credibility.

Under the circumstances, [petitioner] has failed to show that the court's admission of this highly relevant evidence was substantially more prejudicial than probative.

(People v. Canody, slip op. at 15-16 [all footnotes and citations omitted].)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.1999). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Id. at 1031; Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). In short, although admission of all seven prior felony convictions at petitioner's trial may have violated state rules of evidence if its prejudicial effect outweighed its probative value, that does not establish that it violated the constitution. The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995).[20]

In the instant case, petitioner took the stand and admitted he had previously been convicted of felonies.

Q. Mr. Canody, it is true, is it not that you have previously been convicted of felony offenses?

A. Yes.

Q. In 1979, theft offenses?

---

[20] See, e.g., Terrovona v. Kincheloe, 852 F.2d 424, 429 (9th Cir.1988) (remanded to district court to determine if admission of evidence of prior conviction did not violate due process because trial court gave limiting instruction).

1     A.  Yes.

2     Q.  Felonies.  1981, felony theft offense?

3     A.  Yes.

4     Q.  1985, also felony theft offenses?

5     A.  Yes.

6     Q.  And you also suffered two other felony offenses in '87 and '87;
is that correct, sir?

7     A.  Yes, sir.

8   (RT 144-45.)

9     Q.  Mr. Canody, you suffered a theft-related – a conviction for a
theft-related offense in August of 1985; is that correct?

10

11     A.  Yes.

12     Q.  And then you suffered a separate conviction for a theft-related
offense in May of 1981; is that correct?

13     A.  Yes.

14     Q.  And further, you suffered another conviction for a theft-related
offense in May of 1981; is that correct?

15     A.  Um, I only remember one conviction in '81.

16     Q.  Only remember one conviction in '81?

17     A.  Yes.

18     . . .

19     Q.  Mr. Canody, in March of 1979 you also suffered another
20   conviction for a theft-related offense; is that correct?

21     A.  Yes.

22     Q.  Okay.  And further, again, in March of 1979 there was another
conviction for a theft-related offense?

23     . . .

24     THE WITNESS:  Yes.

25     Q.  And then Mr. Roehr already asked you that you further suffered
26   two other felony convictions at another time, correct?

1          A.  Correct.

2   (RT 158-59.)  During redirect examination defense counsel elicited testimony from petitioner

3   that he was 18, 20 and 24 at the time of his prior convictions.  (RT 161.)

4          At the close of petitioner's testimony, the trial court admonished the jury

5   concerning the testimony about the prior felony convictions of petitioner:

> The fact that a witness has been convicted of a felony, if this is a
> fact, may be considered by you only for the purpose of determining
> the believability of the witness.  The fact of a conviction does not
> necessarily destroy or impair a witness's believability.  It is one of
> the circumstances that you must take into consideration in
> weighing the testimony of that witness.
>
> Of course, they're referring to the [petitioner] here.  So you can
> consider the fact of a prior felony conviction only for the purpose
> of determining the believability of the witness, that is while he's
> testifying here in court.
>
> You're not to use it for any other consideration, as to the fact that
> he's been convicted of other theft-related crimes that he most likely
> committed this one or anything like that.  You're not to consider it
> for that purpose, only for the purpose of helping to determine the
> believability of his testimony here regarding other factors.

15  (RT 167-68.)[21]

> Just before closing arguments, the jury was again instructed that
> the fact that a witness has been convicted of a felony, if this is a
> fact, may be considered by you only for the purpose of determining
> the believability of that witness.  The fact of a conviction does not
> necessarily destroy or impair a witness' believability.  It is one of
> the circumstances that you may take into consideration in weighing
> the testimony of that witness, and you should give the testimony of
> a single witness whatever weight you think it deserves.

21  (RT 225.)

---

23   [21]  Defense counsel objected to reference to the prior convictions, which the court heard
24   in sidebar conference.  (RT 168-69.)  The trial court had previously denied petitioner's motion in
     limine concerning admission of the prior convictions.  (RT 168.)  The trial court explained it
     overruling the objection:  "My feeling was I thought there was five convictions that they were
25   going to impeach him with.  I didn't realize it was several counts on a couple counts on some of
     those prior convictions, but I feel the jury is entitled to full disclosure of this type of material and
26   that's why I allowed her to impeach him on different counts, so my ruling will stand."  (RT 169.)

During the prosecution's closing argument, the prosecution made one reference to petitioner's prior convictions:  "And you did hear some information about some prior felony convictions that the [petitioner] has suffered and those are for credibility purposes.  That's what you're – that's just for credibility."  (RT 261-62.)

Here, petitioner has not made any showing that the admission of evidence concerning his prior felony convictions violated due process or his right to a fair trial.  Petitioner's testimony concerning his prior convictions was a small part of the total evidence against petitioner at trial.  The victim testified about the act of robbery.  In addition, some of the victim's personal property was found on petitioner's person when he was apprehended less than one hour after the robbery.

The trial court took steps to minimize the prejudicial impact of this evidence by sanitizing the prior robbery convictions to "theft-related" and omitted any reference to petitioner's prior incarceration.  Moreover, the trial court gave a limiting instructions on two separate occasions.  Juries are presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted.  Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir.1997).  Extreme situations may arise, however, that defeat this presumption, when the instructions given will not be sufficient to overcome the prejudice from improperly admitted evidence.  See, e.g., Thomas v. Hubbard, 273 F.3d 1164, 1173 (9th Cir.2002) (triple hearsay statement offered by law enforcement officer establishing motive and access to weapon was type of statement that jurors would be unable to consider for limited purposes only notwithstanding proper instruction).  This is not such an extreme case.  Even assuming that the trial court erred in admitting all seven prior felony convictions, the error did not result in a complete miscarriage of justice or render the state proceedings fundamentally unfair.  Therefore, this claim should also be denied.

/////

/////

1    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

2 a writ of habeas corpus be denied.

3    These findings and recommendations will be submitted to the United States

4 District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

5 twenty days after being served with these findings and recommendations, any party may file

6 written objections with the court.  The document should be captioned "Objections to Findings

7 and Recommendations."  The parties are advised that failure to file objections within the

8 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

9 F.2d 1153 (9th Cir. 1991).

10 DATED: November 27, 2006.

11

12

_____
UNITED STATES MAGISTRATE JUDGE

13

14 001; cano2296.157

15

16

17

18

19

20

21

22

23

24

25

26